[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-16180
Non-Argument Calendar
_____

D.C. Docket No. 1:10-cv-00285-KD-C


STEPHANIE R. LINDSEY,

Plaintiff-Appellant,

versus

BOARD OF SCHOOL COMMISSIONERS OF MOBILE COUNTY,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(September 25, 2012)

Before TJOFLAT, MARCUS and KRAVITCH, Circuit Judges.

PER CURIAM:

Stephanie R. Lindsey, a black female, appeals the district court's grant of the Board of School Commissioners of Mobile County's ("the Board") motion for summary judgment as to her complaint alleging race-based discrimination under Title VII and 42 U.S.C. § 1981.  Lindsey alleged that a Misty Sullivan, a white co-worker, was paid at a higher rate for substantially the same work.  On appeal, Lindsey alleges that she raised a genuine issue as to whether the Board's legitimate, non-discriminatory reason for the wage discrepancy was a pretext for discrimination. After careful review, we affirm in part, and vacate and remand in part.

We review de novo a district court's grant of summary judgment, applying the same legal standards as the district court.  Cruz v. Publix Super Markets, Inc., 428 F.3d 1379, 1382 (11th Cir. 2005).  Summary judgment is appropriate when, viewing all facts and reasonable inferences in favor of the non-moving party, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  Id.; see also Fed.R.Civ.P. 56(a).

Under Title VII, it is unlawful for an employer to discriminate against an individual with respect to her compensation because of her race.  42 U.S.C. § 2000e-2(a)(1).  If a Title VII disparate treatment claim is based on the same facts as a § 1981 or § 1983 claim, the analysis is the same under all theories of liability, and the claims need not be analyzed separately.  See Crawford v. Carroll, 529 F.3d 961,

2

970 (11th Cir. 2008). Where, as here, a plaintiff's Title VII claim relies on circumstantial evidence, we apply the McDonnell Douglas framework. Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala., 446 F.3d 1160, 1162 (11th Cir. 2006).

Under McDonnell Douglas, the plaintiff carries the initial burden of establishing a prima facie case of discrimination. McDonnell Douglas, 411 U.S. at 802. In order to state a prima facie case of wage discrimination, the plaintiff must establish that: (1) she belongs to a protected class; (2) she received low wages; (3) similarly situated comparators outside of the protected class received higher wages; and (4) she was qualified to receive the higher wage. Cooper v. Southern Co., 390 F.3d 695, 734-35 (11th Cir. 2004), overruled in part on other grounds, Ash v. Tyson Foods, 546 U.S. 454 (2006). As for prong three, a valid comparator must perform a job similar to the plaintiff, id. at 735, and must be similarly situated to the plaintiff in all relevant respects. Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997).

If the plaintiff establishes a prima facie case of discrimination, the burden of production, but not persuasion, shifts to the defendant to proffer a legitimate, non-discriminatory reason for taking the challenged employment action. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07 (1993). Once the defendant does so, the plaintiff must then demonstrate that the proffered reason was pretextual. Id. at 507-08. To meet this burden, the plaintiff must demonstrate both that the proffered

3

reason was false, and that discrimination was the real reason for the employment action. Id. at 515. We must, in view of all of the evidence, determine if a reasonable jury could conclude that the employer's proffered reasons did not truly motivate it. Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997). We can reach this conclusion if the plaintiff demonstrates that the proffered reason was implausible or inconsistent to the degree that a reasonable fact-finder could find it unworthy of credence. Id.

In the context of a failure to promote claim, we have held that an employer's willingness to bend or break established rules to benefit members of one class of employees, but not another, is suggestive of discrimination. Morrison v. Booth, 763 F.2d 1366, 1374 (11th Cir. 1985). In Morrison, officials were flexible with or ignored internal hiring requirements to benefit white applicants for a promotion, but declined to do so for black applicants. Id. Under those circumstances, we held that the employer's proffered reliance on standard procedures as a basis for not promoting the black employees was pretextual. Id.

To begin, Lindsey met her initial burden of establishing a prima facie case of wage discrimination, and the Board does not argue otherwise. Lindsey was a black woman who received lower wages than a white co-worker despite performing substantially the same work. See Cooper, 390 F.3d at 734-35. Sullivan was a valid

4

comparator because, viewing the evidence in the light most favorable to Lindsey, see Cruz, 428 F.3d at 1382, she and Lindsey largely performed similar tasks at work during the relevant periods. See Cooper, 390 F.3d at 735. The fact that Lindsey was Sullivan's immediate successor in many of her tasks helps to demonstrate that the two were similarly situated.

Since Lindsey established a prima facie case, the burden shifted to the Board to articulate a legitimate, non-discriminatory reason why Sullivan received higher wages than Lindsey. See Hicks, 509 U.S. at 506-07. The Board met this burden of production, providing that a previous set of supervisors improperly classified Sullivan as a mechanic, and the new supervisors could not do the same, because Lindsey was not a state-certified mechanic.

After the Board proffered a legitimate, non-discriminatory reason for the wage differential, Lindsey had the burden of raising a genuine issue that the reason was a pretext for discrimination. See id. at 507-08. Lindsey argues that the Board's willingness to make Sullivan a mechanic, despite her lack of qualifications, demonstrates that the Board's adherence to policy in her case was implausible. However, Stephen Cain, Sullivan's former supervisor, transferred Sullivan to mechanic in 1997. After Lindsey assumed Sullivan's job duties, no mechanic position was available until Sullivan vacated her position in 2003 or 2004. At that

5

point, Sadie Cates was the department supervisor, and she would not place a non-certified mechanic into a mechanic position. Cates did not think Sullivan should have been a mechanic, but was prevented from reclassifying her to a position with lower pay. Lindsey is correct that the inconsistent application of company policy can be suggestive of discrimination. See Morrison, 763 F.3d at 1374. However, here, the inconsistent application occurred six years apart, and was enforced by two different supervisors. Under those circumstances, the inconsistent application, by itself, does not render the Board's legitimate explanation that it was merely enforcing policy implausible or inconsistent to the degree that a reasonable fact-finder could find it unworthy of credence. See Combs, 106 F.3d at 1538.

Lindsey also argues that the Board could have provided Lindsey with equal wages by promoting her to a vacant transportation clerk position -- a position which more accurately described her work tasks. In response to that argument, the Board again asserted its policy -- that the transportation clerk had a minimum typing proficiency requirement that Lindsey could not meet -- as a legitimate non-discriminatory reason for not allowing Lindsey to become a transportation clerk.

Again, the burden shifted to Lindsey to raise a genuine issue that the Board's proffered reason was pretextual. See Hicks, 509 U.S. at 507-08. Here, Lindsey met that burden by showing that Cates, as she had previously done for Sullivan, requested

6

a waiver of the typing requirement for a clerk position on Lindsey's behalf. However, while Paul Tate, in human resources, had granted waivers for Sullivan in 2003, he declined Cates's request for Lindsey in 2007. Again, the unequal application of company policies may be suggestive of discrimination. See Morrison, 763 F.3d at 1374. Unlike with the mechanic classification, there is no apparent non-discriminatory reason in the record explaining why Tate would have granted the waiver for Sullivan, and not granted it for Lindsey.

The Board asserts on appeal that Tate made this decision because the Board had granted too many waivers to both white and black employees. But as Lindsey correctly points out, the Board made that assertion without a citation, and the record is devoid of any support for that assertion. The record only reflects that Tate simply told Cates he would no longer grant waivers as he had done in the past. The record contains no affidavit or deposition of Tate.

In this instance, an arbitrary willingness to waive the typing requirement for Sullivan, and not for Lindsey, without any apparent non-discriminatory reason for the discrepancy, could lead a reasonable fact-finder to conclude that the Board's stated adherence to policy was inconsistent to the degree that it was unworthy of credence. See Combs, 106 F.3d at 1538. If so, summary judgment was inappropriate to the extent that the Board could have remedied the disparate wages as between Sullivan

7

and Lindsey by waiving Lindsey's typing requirement for the open clerk position. A reasonable jury could conclude that the Board failed to remedy the fact that Lindsey was paid less than a comparable white worker, and that its reason for doing so was racially discriminatory. Accordingly, the court's grant of summary judgment should be vacated, and the case remanded.

We must note, however, that a waiver of the typing requirement was only a pertinent possibility starting in late 2006, and, in July 2007, Lindsey's job tasks were reclassified. Since the Board's pre-2006 reason for paying Lindsey less than Sullivan was not pretextual, Lindsey should be limited to a recovery, if at all, of disparate wages for the latter time period of less than one year.[1]

**AFFIRMED IN PART, VACATED AND REMANDED IN PART.**

---

[1] Further, because Lindsey only raises issues concerning the denial of her Title VII and 42 U.S.C. § 1981 claims for wage discrimination, all other issues are abandoned on appeal. See United States v. Jernigan, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003). To the extent that the Board and the district court asserted that Lindsey raised a failure to promote claim, Lindsey explicitly has abandoned this argument.